UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FILED
'05 SEP 30 P2 55
SOFRON B NEDILSKY
CLERK

UNITED STATES OF AMERICA,

    Plaintiff,

v.    Case No.

DANIEL L. DROPIK,

    Defendant.

**05 CR 247**

## PLEA AGREEMENT

1. The United States of America, by its attorneys, Steven M. Biskupic, United States Attorney for the Eastern District of Wisconsin, and Mel S. Johnson, Assistant United States Attorney, and the defendant, Daniel L. Dropik, individually and by attorney Nancy Joseph, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement. On behalf of the United States, this agreement has also been agreed to by Assistant United States Attorney Donald Daniels on behalf of the United States Attorney's Office for the Western District of Michigan and Trial Attorney Jacqueline Spratt on behalf of the Criminal Section of the Civil Rights Division of the United States Department of Justice.

### CHARGES

2. The defendant has been charged in an indictment from the Western District of Michigan and an information from the Eastern District of Wisconsin, each of which alleges a violation of Title 18, United States Code, Sections 247(c) and (d)(3).

3. The defendant has read and fully understands the charges contained in the indictment and information and fully understands the nature and elements of the crimes with which he has been

charged and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to waive prosecution by indictment in open court as to the charge in the information filed in the Eastern District of Wisconsin.

5. As to the charge in the indictment filed in the Western District of Michigan, the defendant wishes to plead guilty and waive his right to trial in that district. The defendant consents to the transfer of that case into the Eastern District of Wisconsin under Rule 20, Fed. R. Crim. P., and consents to resolution of that case in this district.

6. The defendant voluntarily agrees to plead guilty to the charge in the indictment set forth in full as follows:

> On or about April 17, 2005, in Ingham County, in the Western District of Michigan, Southern Division,
>
> ### DANIEL L. DROPIK
>
> intentionally damaged and attempted to damage and destroy religious real property because of the race and color of individuals associated with such religious property, in that he then and there set fire to the Trinity African Methodist Episcopal Church located at 3500 West Holmes Road, Lansing, Michigan because of the racial makeup of its membership.

7. The defendant voluntarily agrees to plead guilty to the charge in the information set forth in full as follows:

> On or about April 16, 2005, at Milwaukee, in the State and Eastern District of Wisconsin, the defendant,
>
> ### DANIEL L. DROPIK,
>
> did intentionally deface, damage and destroy and attempt to deface, damage and destroy religious real property because of the race, color, and ethnic characteristics of any individual associated with that religious property; that is, the defendant

2

defaced and damaged by fire, and attempted to deface and damage by fire, the Greater Love Missionary Baptist Church in Milwaukee, Wisconsin.

8. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses described in paragraphs 6 and 7. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits to these facts and that these facts establish his guilt beyond a reasonable doubt:

> The defendant intentionally set fire to two churches, resulting in damage to the buildings because of the race of individuals associated with the churches.
>
> The defendant was interviewed several times by officers from the Jefferson County, Wisconsin Sheriff's Department and special agents from the FBI. The defendant described his actions which are the basis for the charges pending against him.
>
> The defendant reported recent problems with black people. He reported that, in January of 2005, he was at a Greyhound Bus station in Milwaukee, Wisconsin, because he was traveling to Las Vegas, Nevada, to visit his brother. The defendant stated that he went into a restroom and, when he came out, his backpack with all of his possessions had been stolen. Since only black people were present in the terminal at that time, the defendant inferred that someone black had stolen the backpack. In late March or early April of 2005, the defendant reports he was at a party near the University of Wisconsin-Milwaukee, at which he had earlier been a student, and ended up in a fight in which he claims he was beat up by several young black men.
>
> A former girlfriend of the defendant, Meghan Dolan, corroborated that in statements to law enforcement authorities. She was present at the party referred to by the defendant. According to Ms. Dolan, the defendant was very confrontational, seeming to want to get into a fight with a group of four black males. Ms. Dolan reported that the defendant was eventually engaged in a fight with those young men.
>
> The defendant described actions he took shortly thereafter which led to these charges. He was staying with his mother and stepfather in Oconomowoc, Wisconsin. On April 15, the defendant took his mother's car without her permission. (The defendant's mother reported the car as stolen.) The defendant stated that he drove his mother's car to Milwaukee to see a girlfriend. The next morning, the defendant went to a Wal-Mart on Capitol Drive to buy two gasoline cans.

3

Security film from the Wal-Mart on Capitol Drive in Milwaukee is not crystal clear. However, photographs from that Wal-Mart show a man looking like the defendant buying two plastic gas cans in the early morning of April 16, 2005.

The defendant reported that he took the gas cans and filled them at a gas station. Then he drove around Milwaukee looking for a black church to burn. The defendant reported that he found one near Locust in Milwaukee. The defendant stated that he poured the gasoline from one of the cans along the side of the church building and lit that gasoline on fire. He stated that he left quickly while the fire was burning, but left the gas can behind.

There was a church fire in Milwaukee on that date which was investigated by the Milwaukee Police Department. It was at the Greater Love Missionary Baptist Church at 2401 North 10th Street in Milwaukee. That is a predominantly black neighborhood in which the church building is surrounded by other residences. The location of that church is about six blocks from Locust. According to the police investigation, the building was empty at the time that a fire was set at the exterior north wall. The fire department was called and was able to put out the fire fairly quickly. The fire resulted in damaged and charred siding on the north wall as well as the west end of that wall. A small melted gas can was left at the scene. Large signs on the building identify it as a church. The police investigation characterized the fire as an apparent arson. Investigators reported a strong odor of gasoline at the scene and the physical signs observed were consistent with the use of an accelerant to start the fire. No one was injured. The police investigators took photographs at the scene. Those photographs were later viewed by the defendant who identified them as photos of the church he set on fire. The damage to the Greater Love Missionary Baptist Church was approximately $1,000.

The defendant stated that, after setting the Milwaukee fire, he drove around the south end of Lake Michigan into the state of Michigan and stayed overnight near Detroit. After breakfast on April 17, 2005, the defendant drove along the interstate highway in Michigan looking for a church in an apparent black neighborhood. The defendant stated he found one and started pouring gasoline along the side of the church. He stated that he poured out the entire can of gasoline, lit it, and drove away.

Witnesses in Lansing, Michigan, report seeing an unidentified white male pour out gasoline and set a fire along the side of the Trinity Methodist Church in a predominantly black neighborhood of Lansing. The fire department was called and was able to put out the fire fairly quickly, but the Trinity Methodist Church suffered damages of approximately $5,000.

4

The defendant stated that, after setting this second fire, he went to a nearby Ace Hardware Store where he bought another gas can. He filled that can and used the gasoline to start a fire at another church in Michigan, in a city he could not recall. However, law enforcement authorities in Michigan have no record of any church fire in Michigan on that date, other than the Lansing fire described above, so this third fire has never been substantiated.

The defendant unequivocally stated that he set these fires as racial retaliation after the earlier incidents, described above, between the defendant and black people. The defendant stated that he had no regrets but has set no other fires. He stated that his only intent in taking this trip was to find and burn black churches.

Later, the defendant admitted to family members that he had set these fires. Shawn Dropik, the defendant's older brother who lives in Las Vegas, reports that the defendant had admitted to him setting fire to three churches before running out of gas. The defendant's mother also reports that the defendant admitted setting these fires to her.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of or participation in this these offenses.

**PENALTIES**

9. The parties understand and agree that the offenses to which the defendant will enter a plea of guilty each carry the following maximum term of imprisonment and fine: 20 years and $250,000. Each count also carries a mandatory special assessment of $100.00 and a maximum of three years of supervised release. The parties further recognize that a restitution order may be entered by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 29 of this agreement.

10. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

5

11. In exchange for the defendant's guilty pleas, the United States agrees not to prosecute the defendant for any other offenses based on the defendant's actions in this case, described in paragraph 8 of this agreement.

## ELEMENTS

12. The parties understand and agree that in order to sustain each of the charges as set forth in the indictment and information, the government must prove each of the following propositions beyond a reasonable doubt:

First, the defendant defaced, damaged, or destroyed religious real property;

Second, the defendant did so by use of fire;

Third, the defendant acted intentionally; and

Fourth, the defendant did so because of the race of individuals associated with that religious property.

## SENTENCING PROVISIONS

13. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

14. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

15. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offenses set forth in paragraphs 6

6

and 7. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

16. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of defendant's criminal history.

## Sentencing Guidelines Calculations

17. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

18. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which defendant is pleading guilty.

7

### Base Offense Level

19. The parties acknowledge and understand that the government will recommend to the sentencing court that the applicable base offense level for each of the offenses charged is 24 under Sentencing Guidelines Manual § 2K1.4(a)(1).

### Specific Offense Characteristics

20. The parties acknowledge and understand that the government will recommend to the sentencing court that a three-level increase for racial motivation under Sentencing Guidelines Manual § 3A1.1(a) is applicable to the offense level for each of these offenses.

21. The parties acknowledge and understand that the government will recommend to the sentencing court that these two counts are not groupable under section 3D1.2 of the Sentencing Guidelines Manual and that, therefore, under section 3D1.4 of the Sentencing Guidelines Manual, the defendant's combined adjusted offense level increases by 2 to 29.

### Acceptance of Responsibility

22. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

23. Both parties reserve the right to apprise the district court and the probation office of any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

24. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the amount of restitution and the terms and condition of its payment; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

25. The United States will recommend a sentence of incarceration within the guideline range determined by the sentencing court to be applicable. If that range includes sentences of incarceration above 60 months, the United States will recommend a sentence at the low end of the range, but not less than 60 months. If that range includes sentences of incarceration below 60 months, the United States will recommend a sentence at the high end of the range, but not more than 60 months.

## Court's Determinations at Sentencing

26. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph

9

9 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

27. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## Special Assessment

28. The defendant agrees to pay the special assessment in the amount of $200.00 prior to or at the time of sentencing.

## Restitution

29. The parties acknowledge and understand that the government will recommend to the sentencing court that the defendant pay full restitution to the victims of these offenses. The defendant understands that because restitution for the offenses is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

## DEFENDANT'S WAIVER OF RIGHTS

30. In entering this agreement, the defendant acknowledges and understands that in so doing he surrenders certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government

and the judge all must agree that the trial be conducted by the judge without a jury.

b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

31. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

11

32. The defendant acknowledges and understands that he will be adjudicated guilty of each offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

## GENERAL MATTERS

33. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

34. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

35. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

36. The defendant understands that pursuant to the Victim and Witness Protection Act and the regulations promulgated under the Act by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

37. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The

12

defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing.

## **VOLUNTARINESS OF DEFENDANT'S PLEA**

38. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

13

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 9/29/2005

DANIEL L. DROPIK
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 9/30/05

NANCY JOSEPH
Attorney for Defendant

For the United States of America:

Date: Sept. 30, 2005

STEVEN M. BISKUPIC
United States Attorney

Date: Sept. 30, 2005

MEL S. JOHNSON
Assistant United States Attorney

14